UNITED STATES DISTRICT COURT
IN AND FOR THE WESTERN DISTRICT OF LOUISIANA
Shreveport Division

DOUGLAS CRAIN and CATHERINE CRAIN,
                              Plaintiffs,

Versus                                      Civil Action No.

E&M OPERATING, L.L.C. A/K/A E&M
OPERATING COMPANY, L.L.C., and
COLEMAN MATTHEW CALDWELL,          JUDGE
                    Defendants.    **JURY DEMANDED**

## ORIGINAL COMPLAINT AND REQUEST FOR JURY TRIAL

NOW INTO COURT, through undersigned counsel, come **DOUGLAS CRAIN and**

**CATHERINE CRAIN**, Plaintiffs in the above entitled and captioned matter, who respectfully

pray for Judgment of this Honorable Court against defendants, **E&M OPERATING, L.L.C.**

**A/K/A E&M OPERATING COMPANY, L.L.C., and COLEMAN MATTHEW**

**CALDWELL**, jointly, severally and in solido, as set forth in the following complaint:

### PLAINTIFFS

1.

Plaintiffs, DOUGLAS CRAIN and CATHERINE CRAIN, are a married couple, major

domiciliaries of Belcher, Louisiana, and are husband and wife in community.  Plaintiffs may be

referred to in the singular or plural, as "plaintiff" or "plaintiffs."

### DEFENDANTS

2.

Made Defendants herein are:

[a]    COLEMAN MATTHEW CALDWELL, who may also hereinafter be referred to as

"CALDWELL," is believed to be a major domiciliary of Tyler, Texas, and doing business in Caddo Parish, Louisiana. CALDWELL is/was an owner, member, officer, director, employee, representative and agent of co-defendant, E&M OPERATING, L.L.C.; and

[b]     E&M OPERATING, L.L.C. A/K/A E&M OPERATING COMPANY, L.L.C., which may also hereinafter be referred to as "E&M," believed to be a foreign limited liability company formed in the State of Wyoming on August 11, 2015, but operating from a business location in McKinney, Texas, and not authorized to do but doing business in the State of Louisiana, who may be served with process through the Louisiana Long-Arm statute. E&M maintains a registered agent for service of process in the State of Wyoming: United States Corporation Agents, Inc., 1623 Central Avenue, Suite 18, Cheyenne, Wyoming 82001.

## JURISDICTION OF THE COURT and VENUE

### 3.

Plaintiffs respectfully assert that this Honorable Court has jurisdiction in this case arises under federal law and the matter in controversy exceeds $75,000.00, exclusive of costs and interest and the parties to these proceedings are citizens of different states thereby establishing the requisite diversity of citizenship. 28 U.S.C. 1331, 1332. The members of E&M are diverse from plaintiffs. Venue is proper in this District as the Defendants reside in this judicial district. 28 U.S.C. 1391[b],[c].

## REQUEST FOR TRIAL BY JURY

### 4.

Plaintiffs request a trial by jury.

## REQUEST FOR EXEMPLARY/PUNITIVE DAMAGES

### 5.

Plaintiffs respectfully request that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual, statutory, or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of common law and Texas

state laws.

## REQUEST FOR COSTS OF LITIGATION AND ATTORNEYS' FEES

6.

Plaintiffs respectfully request that this Honorable Court award plaintiffs their litigation expenses and other costs of litigation and reasonable attorneys' fees incurred in this litigation.

## GENERAL FACTUAL BASIS

7.

Plaintiffs are consumers, and unsophisticated, unqualified investors.

8.

Plaintiff, Mr. CRAIN, knew defendant CALDWELL from childhood and CALDWELL reached out to plaintiff through social media.

9.

Defendant CALDWELL professed to be the owner of an oil and gas company, the defendant E&M.

10.

Defendant CALDWELL traveled from Texas to plaintiff's home in Caddo Parish, Louisiana and induced plaintiffs to invest monies in E&M through false, material misrepresentations.

11.

Defendant CALDWELL induced plaintiffs to invest monies for the purchase of 25 notes issued by E&M, which are securities under state and federal laws.

12.

Defendant CALDWELL induced plaintiffs to invest monies by claiming that plaintiffs' investments would result in a return of 200%, plus an additional 12% per annum for a three year period of time.

13.

Defendants supplied plaintiffs with a "Private Placement Subscription Agreement" and "Private Placement Memorandum" by E&M.  The agreement listed the offering as Secure Class A Notes and the agreement stated that the notes and securities issued were not registered.

14.

Initially, defendants obtained $25,000.00 from plaintiffs in or about May, 2016, by wire transfer from plaintiff's bank, Regions Bank, in Caddo Parish, Louisiana to defendants' bank account.

15.

Defendants obtained the investment monies.

16.

In June, 2016, defendants advised plaintiffs that they would receive a 5% share membership in E&M and defendants issued a "Membership Certificate" to plaintiff, Mr. CRAIN on June 2, 2016.

17.

In June, 2016, defendants further advised plaintiffs that they would receive a 1% share membership in E&M for each of plaintiffs' children, Amy Crain and Walter Crain, and defendants issued a "Membership Certificate" to Amy Crain and Walter Crain on June 2, 2016.

18.

The membership certificates and shares were used to further induce plaintiffs to trust defendants.

19.

Defendants induced plaintiffs to invest additional monies for the purchase of additional notes issued by E&M, which were also securities under state and federal laws.

20.

Defendants induced plaintiffs to invest additional monies in the sum of $750.00, by claiming that plaintiffs' investments would also result in a return of 200%, plus an additional 12% per annum for a three year period of time, with each note created on or about May 10, 2016.

21.

Defendants advised plaintiffs that E&M's remaining membership and shares were being acquired by Striper Oil Company, an established, reputable oil and gas company, which was in the process of seeking an IPO to take the company public which would be beneficial to E&M and its owners.

22.

Unbeknownst to plaintiffs, Striper Oil Company had no relationship with defendants and were not acquiring any interest in E&M.

23.

As of late 2017, after defendants had obtained $25,750.00 in investment monies from plaintiffs, defendants ceased communicating with plaintiffs and plaintiffs tried repeatedly to reach defendants. To date, defendants have refused to respond.  Defendants are in anticipatory

breach by failure to respond and refusal to acknowledge the due date of maturity on all notes in early May, 2019.

24.

Plaintiffs ultimately located and were able to speak with the owner of Striper Oil Company, Sam Smith, who advised plaintiffs that Striper Oil Company had no relationship with defendants and were not acquiring any interest in E&M but he knew defendants.  Smith contacted defendants, who actually spoke to Smith, and defendants told Smith that defendants did not intend to pay plaintiffs' notes upon maturity.

25.

Plaintiffs were unaware of defendants' misrepresentations regarding E&M's alleged holdings and value.

26.

Defendants claimed that E&M offered the subject Notes in relation to well production.

27.

Despite amicable demand efforts by plaintiffs to defendants, defendants have failed to respond or respond to requests for payment.

28.

Defendants misrepresented the purpose of the securities sold to plaintiffs and defendants did not acquire or use the investment monies for the purposes claimed.

29.

Defendants have utilized other identities to sell securities, including "Gulfstream Oil Operating Company."

30.

Defendants led plaintiffs to believe that E&M was engaging in a legitimate private placement however defendants converted the investment monies to the personal use of defendant CALDWELL.

31.

Plaintiffs had no reason to know or suspect defendants' fraud.

32.

It was not until recently that plaintiffs learned that defendants had committed a large number of frauds and misdeeds in connection with plaintiffs' investment monies, including false material misrepresentations to plaintiffs in connection with the issuance and sale of securities to plaintiffs, material misrepresentations in the agreement and memorandum with respect to the legitimacy and quality of the securities, issuing false statements in connection with the issuance and sale of securities, mail fraud, conversion of securities and investment monies, fraud, violations of the 1933 Act [federal securities], the 1934 Act [federal securities], Louisiana Blue Sky Laws, and the Texas Securities Act, and breaches of duties of honesty, good faith, loyalty, trust and fiduciary duties.

33.

Plaintiffs sustained a wide variety of economic and non-economic damages.

## C O U N T S

### COUNT 1 - NEGLIGENCE

34.

Defendants owed duties of reasonable care to plaintiffs.

35.

Defendants failed to exercise reasonable care and prudence in the issuance and sale of securities to plaintiffs, all made the subject of this lawsuit, and which consequently caused damaged plaintiffs.

## COUNT 2 - BREACH OF TRUST AND FIDUCIARY DUTIES

36.

Defendants owed fiduciary duties and duties of trust, good faith, loyalty, fiduciary, and honesty to Plaintiffs.  Defendants' duties were owed as issuers and sellers of securities but CALDWELL also owed these duties in the management of E&M as plaintiffs became part owners of and membership and interest owners in E&M.

37.

Defendants breach their fiduciary duties and duties of due diligence to plaintiffs, in the following illustrative, non-exclusive premises: [a] failure to make true and accurate statements of material facts to plaintiffs; [b] conspiring to defraud plaintiffs; [c] making material and false statements in connection with the issuance and sale of securities to plaintiffs; [d] failing to act in plaintiffs' best interests; [e] concealment and failure to disclose material facts to plaintiffs; [f] failure to act in good faith towards plaintiffs; [g] false material misrepresentations to plaintiffs concerning alleged acquisition of E&M; [h] material misrepresentations with respect to the quality of the issuance and sale of securities to plaintiffs; [i] issuing a false agreement and memorandum; [j] mail fraud; [k] conversion of plaintiffs' securities and investment monies; and [l] violating state and federal securities laws.

## COUNT 3 - DECEPTION/DECEPTIVE TRADE PRACTICES

38.

Defendants purposefully deceived Plaintiffs to gain an economic advantage and engaged in unfair, deceptive and illegal acts and omissions designed to gain economic benefit from the deception.

39.

Defendants have violated Texas's deceptive trade practices laws by engaging in unfair and deceptive trade practices aimed at harming plaintiffs.   Defendants are liable unto plaintiffs accordingly.

## COUNT 4 - LOUISIANA BLUE SKY LAWS

40.

Louisiana Blue Sky Laws define unlawful conduct violating the state's securities laws in La. RS 51:712, in pertinent part:

"A. It shall be unlawful for any person:

[1] To offer to sell or to sell any security in violation of R.S. 51:703, 705, or any rule, regulation or order promulgated or issued by the commissioner under this Part.

[2] To offer to sell or to sell a security by means of any oral or written untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, if such person in the exercise of reasonable care could not have known of the untruth or omission.

[3] To offer or sell any security:

[a] Registered under R.S. 51:705[B] by means of any prospectus except a prospectus which complies with R.S. 51:705[B][3].

[b] Registered under R.S. 51:705[E] by means of any prospectus except a prospectus which complies with R.S. 51:705[E][3].

[c] Registered under R.S. 51:705[F] by means of any prospectus except a prospectus which complies with R.S. 51:705[F][4].

B. It shall be unlawful for any person to make to any prospective purchaser, customer, or client any representation that the filing or effectiveness of a registration statement or the registration of any security under R.S. 51:705, or the existence of any exemption for any security or transaction means that the commissioner has passed in any way upon the truth, completeness, or accuracy of such registration statement or the merits of such security or has recommended or given approval to such security or transaction.

C. It shall be unlawful for any person who:

[1] Is a dealer, salesman, or investment adviser under this Part.

[2] Is making an application for registration as a dealer, salesman or investment adviser under this Part.

[3] Is an issuer which has filed a registration statement with respect to securities it intends to issue.

[4] Is an affiliate of any of the persons described in Paragraph [1], [2], or [3] of this Subsection knowingly to cause to be made, in any document filed with the commissioner or in any proceeding under this Part, any statement which is, at the time it is made and in light of the

circumstances under which it is made, false or misleading in any material respect.

D. It shall be unlawful for any person in connection with the offer, sale, or purchase of any

security, directly or indirectly:

[1] To employ any device, scheme, or artifice to defraud.

[2] To engage in any transaction, act, practice, or course of business which operates or would

operate as a fraud or deceit upon the purchaser or seller. ***" La. Stat. Ann. § 51:712

41.

Each of defendants' acts and omissions described herein above violate Section 712.

42.

La.. RS 51:714 is the enabling provision allowing a private right of action in a civil

proceeding.

## COUNT 5 - MISREPRESENTATION

43.

Defendants purposefully or, alternatively, negligently misrepresented material facts to

plaintiffs regarding the issuance and sale of securities and investments upon which Plaintiffs

relied to their detriment.

## COUNT 6 - FRAUD

44.

Defendants acted to defraud plaintiffs of investment monies.

## COUNT 7 - UNJUST ENRICHMENT

45.

Defendants have been unjustly enriched at the impoverishment of plaintiffs, without

cause, and defendants owe the value of that enrichment which must be restituted.

## COUNT 8 - BREACH OF CONTRACT AND ANTICIPATORY BREACH

46.

Defendants have breached their agreements with plaintiffs.  Defendants' breaches are in bad faith, or alternatively, in good faith.  Plaintiffs are entitled to direct and indirect damages flowing therefrom.  Defendants' communications with Sam Smith, coupled with repeated failure to communicate and to respond to requests and demands by plaintiffs, made defendants' repudiation and anticipatory breaches very clear.  Defendants do not intend to perform on or before May 10, 2019, the date of maturity of all notes.

## COUNT 9 - CIVIL CONSPIRACY TO DAMAGE PLAINTIFFS

47.

Defendants engaged in a civil conspiracy to damage plaintiffs.  Defendants are liable for civil conspiracy as they consist of two or more persons, with an object to be accomplished, through a meeting of minds on the object or course of action, based on one or more unlawful, overt acts, and the defendants' acts have caused damages to plaintiffs.

## COUNT 10 - TEXAS SECURITIES ACT [BLUE SKY LAW]

48.

Defendants also violated the Texas Securities Act a/k/a Blue Sky Law.

49.

The Texas Securities Act a/k/a Blue Sky Law prohibits false statements and material omissions in the sale of securities and imposes liability upon sellers who do so.

50.

Defendants offered and sold securities to plaintiffs by means of untrue statements of material fact and omissions.

51.

Each defendant had a specific or general awareness of its role in the securities violations, substantially assisted in the violations, and intended to deceive the plaintiffs or, alternatively, acted with reckless disregard for the truth regarding the representations made by Defendants.

52.

Further, defendant E&M was a person who directly or indirectly controlled defendant CALDWELL, as its director, officer, partner, employee, agent and representative.  Defendant E&M had a duty to supervise and oversee the activities of Defendant CALDWELL and failed to do so.

53.

The Texas Securities Act a/k/a Blue Sky Law imposes this liability upon a control person/entity, for violations of their subordinate, because that person/entity is in a position to prevent the violation.

54.

None of the defendants are licensed to issue, offer or sell securities in the State of Texas nor are they registered through the Texas Securities Board.  The failure to obtain licensure and registration is likewise a violation of Texas Securities Act a/k/a Blue Sky Law.

## COUNT 11 - SECURITIES ACT OF 1933, 15 U.S.C. 77

55.

Defendants violated the Securities Act of 1933 by making false statements and omissions of material fact, and in the use of a manipulative scheme, device or contrivance, in connection with the issuance and sale of securities to plaintiffs.

56.

Defendants issued an agreement and memorandum containing false and misleading information to plaintiffs, prior to the issuance and sale of securities to plaintiffs and those non-exempt securities were acquired by plaintiffs in reliance on the statements and representations of defendants.

57.

The securities at issue were offered interstate and defendants used the internet, phone and mail system to induce plaintiffs, as well as CALDWELL's travel from Texas to Louisiana and to plaintiffs' home, to obtain the securities, as described herein.

58.

Defendants used means and instrumentalities of interstate commerce to offer and sell the securities to plaintiffs.

59.

The subject securities are not exempt from the scope of the 1933 Act.

60.

Defendants failed to truthfully and fully disclose materials facts that a reasonable investor would require to make an informed decision prior to investment.

61.

Defendants also provided false financial information regarding E&M and regarding the underlying project for which the securities were issued purportedly for the purpose of financing.

62.

Defendants also provided false financial information regarding management of E&M and regarding the management and even the legitimacy of the underlying project for which the securities were issued purportedly for the purpose of financing.

## COUNT 12 - SECURITIES ACT OF 1934, 15 U.S.C. 78

63.

Defendants violated the Securities Act of 1934 by making false statements and omissions of material fact, and in the use of a manipulative scheme, device or contrivance, in connection with the sale of securities to plaintiffs.

64.

17 C.F.R §240.10b-5 provides: "Employment of manipulative and deceptive devices. It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

[a] To employ any device, scheme, or artifice to defraud,

[b] To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

[c] To engage in any act, practice, or course of business which operates or would operate as a

fraud or deceit upon any person, in connection with the purchase or sale of any security."

65.

Defendants violated "10b-5" in numerous respects as described herein above and did so with intent to defraud and with willful or reckless disregard for the interests of the plaintiffs.

66.

Each defendant had a specific awareness of its role in the securities violations, substantially assisted in the violations, and intended to deceive the plaintiffs or, alternatively, acted with reckless disregard for the truth regarding the representations made by Defendant CALDWELL.

67.

Further, defendant E&M was a person who directly or indirectly controlled defendant CALDWELL, as its director, officer, partner, employee, agent and representative.  Defendant E&M had a duty to supervise and oversee the activities of Defendant CALDWELL and failed to do so.

68.

The 1934 Act imposes this liability upon a control person/entity, for violations of its subordinate, because that person/entity is in a position to prevent the violation.

**COUNT 13 - VICARIOUS LIABILITY/RESPONDEAT SUPERIOR**

69.

Defendant E&M is vicariously liable for the fault of its employee, agent, director and representative CALDWELL.  CALDWELL's acts, omissions and fault occurred while in the course and scope of his employment with E&M and E&M authorized his acts and omissions and

E&M profited from the acts and omissions of CALDWELL.

## ADDITIONAL ALLEGATIONS

### 70.

The above and foregoing actions, inactions and fault of defendants, as to each and every count, have proximately caused a wide variety of damages to plaintiffs.

### 71.

Defendants are liable unto plaintiffs for all actual, statutory, exemplary and punitive damages to be awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, property damages, pain and suffering, embarrassment, inconvenience, fear of financial security, lost investment monies, loss of bargain damages, lost monies caused by securities violations, lost economic and investment opportunity and value, lost expectancy of profit and investment return, lost value of the investments, loss of incidental time, frustration, emotional distress, mental anguish, attorneys' fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PLAINTIFFS, DOUGLAS CRAIN and CATHERINE CRAIN, PRAY** that after all due proceedings be had there be judgment herein in favor of Plaintiffs and against Defendants, **E&M OPERATING, L.L.C. A/K/A E&M OPERATING COMPANY, L.L.C., and COLEMAN MATTHEW CALDWELL**, as follows:

1] That there be Judgment in favor of **DOUGLAS CRAIN and CATHERINE CRAIN,** and against **E&M OPERATING, L.L.C. A/K/A E&M OPERATING COMPANY, L.L.C., and COLEMAN MATTHEW CALDWELL,** jointly, severally and in solido to the maximum possible extent, for all reasonable damages sustained by Plaintiffs including but not limited to actual, statutory, exemplary and punitive damages to be awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket

expenses, property damages, pain and suffering, embarrassment, inconvenience, fear of financial security, lost investment monies, loss of bargain damages, lost monies caused by securities violations, lost economic and investment opportunity and value, lost expectancy of profit and investment return, lost value of the investments, loss of incidental time, frustration, emotional distress, mental anguish, attorneys' fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**FURTHER, DOUGLAS CRAIN and CATHERINE CRAIN PRAY** for trial by jury.

**FURTHER, DOUGLAS CRAIN and CATHERINE CRAIN PRAY** for all such additional, general and equitable relief as may be necessary and proper in the premises.

Respectfully submitted,

**BODENHEIMER, JONES & SZWAK, LLC**

By: _____
       **DAVID A. SZWAK, LBR#21157**
       416 Travis St., Ste. 1404
       Mid South Tower
       Shreveport, Louisiana  71101
       Telephone: [318] 424-1400
       Facsimile:[318] 221-6555
**ATTORNEYS FOR PLAINTIFFS**