# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| DOUGLAS CRAIN, ET AL. | CIVIL ACTION NO.: 18-CV-00548 |
| VERSUS | JUDGE ELIZABETH FOOTE |
| E&M OPERATING, L.L.C., ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Now before the Court is a Renewed Motion for Default Judgment filed by Douglas and Catherine Crain ("Plaintiffs") against E&M Operating, L.L.C. ("E&M") and Coleman Matthew Caldwell ("Caldwell") (collectively, "Defendants"). [Record Document 20]. For the reasons discussed below, Plaintiffs' Renewed Motion for Default Judgment is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

Plaintiffs are a married couple who claim to have invested a total of $25,750.00 with E&M, an oil and gas company, after being induced to do so by Caldwell. Record Document 15-2, p. 4; 20-1, p. 11. According to Plaintiffs, Caldwell professed to be the owner of E&M and induced them to purchase twenty-five notes issued by E&M by falsely claiming that this investment would result in a return of 200% plus an additional 12% per annum for a three-year period. Record Document 1, ¶s 9–12. Plaintiffs purchased these notes, which they claim are securities under federal and state law, for $25,000.00 in May of 2016. *Id.* at ¶s 11 & 14. Defendants advised Plaintiffs in June of 2016 that they would receive a 5% share membership in E&M and that their two adult children would each receive a 1% share membership in E&M. *Id.* at ¶s 16–17. These share memberships were accompanied by "Membership Certificates," which Plaintiffs claim were used to further

1

induce them to trust Defendants and to purchase additional notes for a sum of $750.00. *Id.* at ¶s 18–20. Defendants told Plaintiffs that E&M's remaining membership and shares were being acquired by Striper Oil Company. *Id.* at ¶ 21. Plaintiffs allege they have since spoken with Sam Smith ("Smith"), the owner of Striper Oil Company, who stated that his company had no relationship with Defendants and was not acquiring any interests in E&M. *Id.* at ¶ 24. Plaintiffs claim that Defendants told Smith that they do not intend to pay Plaintiffs' notes upon maturity. *Id.* Defendants allegedly ceased communications with Plaintiffs in late 2017 even though Plaintiffs have tried repeatedly to reach them since that time. *Id.* at ¶ 23. Plaintiffs assert that Defendants are in anticipatory breach of their agreement because Defendants have failed to respond to their attempts at contact or acknowledge that the maturity date on the notes is early May of 2019.[1] *Id.* Plaintiffs claim that Caldwell misrepresented the holdings and value of E&M and that he converted the money they invested in E&M to his own personal use. *Id.* at ¶s 25 & 30.

Plaintiffs state that Defendants committed "a large number" of frauds and misdeeds in connection with their investment monies, including false material misrepresentations as to the issuance and sale of securities to Plaintiffs, material misrepresentations in the agreement and memorandum with respect to the legitimacy and quality of the securities, issuing false statements in connection with the issuance and sale of securities, mail fraud, conversion of securities and investment monies, fraud, violations of federal securities laws, Louisiana Blue Sky Laws, and the Texas Securities Act, and breaches of the duties of honesty, good faith, loyalty and trust, and breach of fiduciary duties. *Id.* at ¶ 32. Plaintiffs claim that they have sustained a wide variety of economic and non-economic damages. *Id.* at ¶s 33 & 71.

---

[1] The instant motion was filed prior to May of 2019. Because the Court has not received any notice from either party that Defendants ever paid Plaintiffs any amount of money, the Court assumes that these claims are now for breach of contract rather than anticipatory breach of contract.

The Court denied Plaintiffs' first motion for default judgment because Plaintiffs did not present a clear legal basis for recovery. Record Document 17, pp. 10–11. Plaintiffs were granted permission to re-urge their motion "by submitting additional evidence and more convincing briefing." *Id.* at 11. Plaintiffs then filed the instant renewed motion for default judgment.

## DEFAULT JUDGMENT STANDARD

A default judgment involves three steps: (1) default, (2) entry of default, and (3) default judgment. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (citing Fed. R. Civ. P. 55(a)).

> A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules. An entry of default is what the clerk enters when the default is established by affidavit or otherwise. After defendant's default has been entered, plaintiff may apply for a judgment based on such default. This is a default judgment.

*Id.* (citations omitted). Here, Defendants failed to plead or otherwise defend against this lawsuit. Additionally, Plaintiffs obtained an entry of default judgment from the clerk against both E&M and Caldwell. [Record Documents 8 & 11]. Therefore, the first two requirements for a default judgment have been met.

By defaulting, a defendant admits to the plaintiff's well-pleaded allegations of fact, at least with respect to liability. *Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002) (citing *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Even though the facts are admitted, the plaintiff still has the burden of showing that those facts give rise to a viable cause of action. *See Nishimatsu*, 515 F.2d at 1206 ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). In addition, a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). No party is entitled to a default judgment as a matter of right, even where the defendant is technically

3

at fault. *Lewis v. Lynn,* 236 F.3d 766, 767 (5th Cir. 2001) (per curiam) (quoting *Ganther v. Ingle,* 75 F.3d 207, 212 (5th Cir. 1996)). The disposition of a motion for default judgment ultimately rests within the sound discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

## ANALYSIS

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability." *United States ex rel. M-CO Constr. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). However, a default judgment does not establish the amount of damages. *Id.* Therefore, the Court must first determine (1) whether Defendants are liable to Plaintiffs, and then (2) what amount of damages, if any, are owed to Plaintiffs.

## I.    Liability

In determining whether to enter a default judgment, the Court must consider whether such a remedy is appropriate under the circumstances of the case. *See Sun Bank of Ocala v. Pelican Homestead and Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations."). Factors relevant to the entry of a default judgment include

> whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obligated to set aside the default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

In this case, there can be no material issues of fact in dispute because Defendants admitted to Plaintiffs' well-pleaded allegations by failing to file any pleadings responsive to the complaint. *See Jackson*, 302 F.3d at 525. This failure to respond creates a basis for default and resulted in

prejudice to Plaintiffs in the form of lost investment funds. Nothing in the record suggests that Defendants' failure to respond is the result of a good faith mistake or excusable neglect. In fact, an individual named Nick Darden, E&M's agent for service of process, attempted to file an answer on behalf of E&M. Record Document 4.[2] Magistrate Judge Hornsby then ordered E&M to file an answer signed by an authorized attorney, as required by Fifth Circuit precedent. Record Document 5, p. 1. The order warned E&M that a failure to do so would result in the answer being stricken and expose E&M to a default judgment. *Id.* at 2. No other answer was filed, and the answer was stricken. Record Document 9. The Court views Darden's attempt to file an answer on behalf of E&M as further evidence[3] that both Defendants had notice of the instant law suit. *See* Record Document 1, ¶ 9 (stating that Caldwell claimed to be the owner of E&M). Defendants' failure to respond to this lawsuit offsets the harshness of a default judgment. Finally, the Court knows of no facts that would provide good reason to set aside a default judgment if Defendants were to challenge it. Based on these reasons, the Court finds that the circumstances of this case warrant a default judgment.

The Court must now determine whether Plaintiffs' complaint establishes a cause of action against Defendants. *Nishimatsu*, 515 F.2d at 1206.

A.    Fraud Claims

In Louisiana,[4] fraud is defined as "a misrepresentation or a suppression of the truth made with the intention to obtain an unjust advantage for one party or to cause a loss or inconvenience

---

[2] The Court finds it worth noting that this Answer included no substantive information, only Darden's contact information. *See* Record Document 4.

[3] This evidence of notice is secondary to the fact that both Caldwell and E&M were served. Record Documents 3 & 6.

[4] Under the *Erie* doctrine, federal courts sitting in diversity apply the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)

to the other . . . ." La. Civ. Code art. 1953. The elements of an action for fraud against a party to a contract are: "(1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract." *Jones v. Wells Fargo Bank, NA*, 626 F. App'x 500, 504–05 (5th Cir. 2015) (per curiam) (quoting *Shelton v. Standard/700 Assocs.*, 2001-0587 (La. 10/16/01); 798 So. 2d 60, 64)). Furthermore, "[f]raud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence." La. Civ. Code art. 1957.

Each of the elements of a fraud claim are supported by the factual allegations in the complaint and by the documents attached to the instant motion. The record reflects that Plaintiffs and E&M, through Caldwell, entered into a contract for the sale of the notes. Record Documents 20-13–20-15. These documents show a wire transfer from a Regions Bank account in the amount of $25,000.00, a check written by Douglas Crain ("Crain") to Caldwell in the amount of $750.00, and a subscription agreement showing that Crain purchased 25 notes at $1,000 a note from E&M. *See id.* In an affidavit, Crain alleges that Caldwell made false, material misrepresentations that were intended to induce Plaintiffs to contract with E&M. *See* Record Document 20-5, ¶ 9. The main misrepresentation made by Defendants was that Plaintiffs would be paid double their investment, plus an additional 12% per annum simple interest on the principal investments, for a total of 236% over the three-year period from the date of the purchase. *Id.* at ¶ 22. Plaintiffs also claim that Caldwell made other statements indicating that E&M was profitable and sought-after by investors. *Id.* at ¶s 11, 14, &16. These statements allegedly induced Plaintiffs to invest money with Defendants in exchange for what they thought were securities. *Id.* at ¶s 8 & 18–20. However, when Plaintiffs repeatedly asked Caldwell to produce the notes they purchased, he claimed that an

attorney and a CPA were drawing up the documents. *Id.* at ¶ 72. Plaintiffs state that they have never been provided with any notes or any documentation substantiating their investments. *Id.* Neither have Plaintiffs received any money in return for their investments. *Id.* at ¶ 67. Finally, and most troubling, Plaintiffs allege that Caldwell ceased all communication with them in late 2017. *Id.* at ¶ 108.

The Court recognizes that an action for fraud cannot be based on statements relating to future events or promises that went unfulfilled. *Taylor v. Dowling Gosslee & Assocs., Inc.*, 44, 654 (La. App. 2 Cir. 10/7/09); 22 So. 3d 246, 255. "Failure to perform as promised or nonperformance of an agreement to do something at a future time alone is not evidence of fraud." *Id.* However, an action for fraud may be based on a promise that was made without the intention to perform at the time the promise was made. *Id.* In this case, Plaintiffs explicitly allege that Defendants intended to deceive them and steal their money. Record Document 20-5, ¶s 9, 24, & 106. Plaintiffs state that the "Private Placement Subscription Agreement" [Record Document 20-11] and the "Private Placement Memorandum" [Record Document 20-12] that Caldwell supplied them with contained "nothing but lies which defendants, through Caldwell, fabricated to deceive [Plaintiffs] and to steal [Plaintiffs'] monies." *Id.* at ¶ 24. Taking these allegations as true, as the Court must on a motion for default judgment, Plaintiffs have established a prima facie case of fraud under Louisiana Civil Code article 1953.

The Court finds that Caldwell fraudulently induced Plaintiffs to enter into a contract with E&M for the sale of the notes through material misrepresentations. Additionally, fraud committed by Caldwell vitiates Plaintiffs' consent to the contract with E&M. La. Civ. Code art. 1956 ("Fraud committed by a third person vitiates the consent of a contracting party if the other party knew or

should have known of the fraud.").[5] Thus, Plaintiffs are entitled to a rescission of the contract. *See* La. Civ. Code art. 1948 ("Consent may be vitiated by error, fraud, or duress."). Accordingly, Plaintiffs' motion for default judgment [Record Document 20] is hereby **GRANTED** as to Plaintiffs' fraud claim against Defendants.

B.   Claims Other than Fraud

In addition to their fraud claim, Plaintiffs bring twelve other causes of action against Defendants, including violations of the Securities Acts of 1933 and 1934, violations of the Blue Sky Laws of Texas and Louisiana, negligence, breach of trust and fiduciary duty, misrepresentation, deceptive trade practices under Texas law, unjust enrichment, breach of contract and anticipatory breach of contract, civil conspiracy, and vicarious liability. Record Document 1, ¶s 34–69. Most of these causes of action are vague, overlapping, and not adequately articulated. *See id.*

In its ruling on Plaintiffs' first motion, the Court stated that it was "unable to determine from the record whether any money is due the Plaintiffs and, if so, the appropriate amount." Record Document 17, p. 4. The Court noted that the record did not contain any securities or proof of indebtedness, nor did it contain the promissory notes that were mentioned in other documents submitted by Plaintiffs. *Id.* at 5 & 6. Without submitting any additional evidence, Plaintiffs now contend that "the sale of notes and promise to provide the notes, coupled with the defendants' communications and the signed Subscription Agreement and Private Placement Memo, collectively show that the matters and transactions were 'securities' as defined by federal and

---

[5] Caldwell is alleged to be the owner of E&M. Record Document 1, ¶ 9. Therefore, E&M would certainly have known of any fraud committed by Caldwell.

states' laws." Record Document 20-1, p. 11. Specifically, Plaintiffs allege that these documents combined to create a type of security known as an investment contract. *Id.* at 4.

Despite Plaintiffs' assertion, the Court finds that they have not demonstrated that an investment contract existed between the parties. While Plaintiffs may have a valid argument on this point, the claim has not been adequately briefed. In lieu of analysis, Plaintiffs' brief provides five pages of quotations on the topic of investment contracts. Record Document 20-1, pp. 5–9. Plaintiffs do not apply the law regarding the elements of an investment contract to the facts of this case or direct the Court's attention to any case law where an investment contract was found to exist under similar circumstances. This same lack of application and analysis persists throughout Plaintiffs' briefing on their other alleged causes of action. The Court holds that, other than fraud, Plaintiffs have not applied the law or elements of their claims to the facts of this case and therefore have not shown that their claims give rise to a viable cause of action other than fraud. Accordingly, Plaintiffs' motion for default judgment [Record Document 20] is hereby **DENIED** as to all claims other than fraud.

## II.    Damages

Now that the Court has established that Defendants are liable to Plaintiffs, it must calculate the proper amount of damages. Rule 55(b) gives a court the ability to conduct an evidentiary hearing if one is needed to determine the amount of damages. Fed. R. Civ. P. 55(b). "As a general proposition, in the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing," but the rule "is subject to an exception where the amount claimed is a liquidated sum or one capable of mathematical calculation." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). An evidentiary hearing is not warranted when damages can be calculated by reference to the pleadings and the supporting documents only. *Id.* at 311. "The court may rely on

detailed affidavits or documentary evidence, supplemented by the judge's personal knowledge, to evaluate the proposed sum." *Richardson v. Salvation Army, Southern Territory, USA*, 161 F.3d 7, 7 (5th Cir.1998) (per curiam). Here, the Court finds that the amount Defendants owe Plaintiffs is capable of mathematical calculation and that no evidentiary hearing is needed to calculate the award.

A.  <u>General Damages</u>

&#x20;

In the instant motion, Plaintiffs clarify that they invested a total of $25,750.00 with Defendants and state that any other amounts listed in their previous motion were typographical errors. Record Document 20-1, p. 11. To prove this total amount, Plaintiffs point to two exhibits: a customer receipt from Regions Bank showing a wire transfer in the amount of $25,000.00 [Record Document 20-13] and a copy of a check made out to Caldwell from Crain in the amount of $750.00 [Record Document 20-14]. *Id.* The $25,000.00 wire transfer is corroborated by the Subscription Agreement, wherein Crain agrees to buy 25 notes from E&M at $1,000.00 a note. Record Document 20-15. Because Plaintiffs are entitled to a rescission of their contract with Defendants, the Court finds that they are entitled to a return of the funds they transferred to Defendants in the amount of $25,750.00. La. Civ. Code art. 1958 ("The party against whom a rescission is granted because of fraud is liable for damages and attorneys' fees.")

B.  Out of Pocket Monies, Expected Returns, Non-economic Damages, and Punitive Damages

Plaintiffs claim that they should be awarded $700.00 for "Out of Pocket Monies," $60,770.00 for expected returns, $65,000.00 for non-economic damages, and $303,850.00 for punitive damages. Record Document 20-1, p. 19. The Court finds that nothing in the record or briefing submitted by Plaintiffs provides a sufficient basis on which to award those amounts of damages.

1. "Out of Pocket Monies"

Beginning with the claim for "Out of Pocket Monies," Plaintiffs state that they expended $700.00 "in dealing with various matters surrounding the investments and trying to recoup [their] monies before hiring attorney." *Id.* at 27. Plaintiffs provide no evidence supporting their claim for this amount, nor do they specify what they purchased with these funds. Therefore, Plaintiffs are not entitled to $700.00 in "Out of Pocket Monies."

2. Expected Returns

Next, Plaintiffs claim that they should be awarded $67,770 in expected returns. *Id.* at 19. Plaintiffs state that this amount "is derived by multiplying $25,750.00 by 12% simple interest then multiplying that figure [$3,090.00] by three [3] for three years to equal $9,270.00. That figure is added to twice [200%] the original sum of $25,750.00, for a total of $60,770.00." *Id.* at 19 n.18. In their first motion, Plaintiffs made a similar request for expected returns in the amount of $67,260.00. Record Document 15-2, p. 4. In its ruling, the Court stated that it could not determine how Plaintiffs calculated that amount. Record Document 17, p. 8. Particularly, the Court noted that it was unclear when the three-year period began to run. *Id.* at 8 n.3. Furthermore, the Court observed that the subscription agreements did not contain a maturity date of the indebtedness. *Id.* at 9. The Court pointed out that the "Confidential Private Placement Memorandum, E&M Operating LLC" explicitly states that the 12% interest would be paid monthly after the first well was in production. *Id.* at 9; *see also* Record Document 20-12, p. 3 ("12% Annual Rate of Interest Paid monthly beginning the first month after first well in production for 36 months . . . ."). To date, no information has been provided to the Court as to whether any wells were ever in production. *Id.* at 10.

In the instant motion, Plaintiffs respond to the Court's concerns by stating that "Plaintiffs show that the 36 month term commenced from the date of the investments." Record Document 20-1, p. 14. In support of this conclusion, Plaintiffs cite to the several documents in the record, none of which contain any guidance as to when interest began to accrue on the notes or whether E&M ever had any wells in production. Because Plaintiffs have again failed to demonstrate that they are entitled to $67,700.00 in expected returns, they cannot recover those damages.

### 3. Non-economic and Punitive Damages

Plaintiffs claim to be entitled to $65,000.00 in non-economic damages and $303,850.00 in punitive damages. Record Document 20-1, p. 19. In their first motion, Plaintiffs claimed that they were entitled to $65,000.00 in non-economic damages and $478,800.00 in punitive damages. Record Document 15-2, p. 4. The Court found that Plaintiffs' brief provided neither a basis in law for the award of punitive and noneconomic damages nor a basis in fact for the measure of those damages. Record Document 17, p. 10.

The Court can find no additional arguments or evidence regarding the factual or legal basis for the amount of punitive or noneconomic damages requested in the instant motion. In fact, the paragraphs that directly address those damages are nearly identical to the first motion filed. *See* Record Documents 15-2, pp. 10–11; 20-1, pp. 26–27. Plaintiffs appear to have made no effort to provide the Court with "additional evidence and more convincing briefing" as instructed.[6] *See*

---

[6] The instant motion does include two new statements regarding punitive damages: (1) that Texas law allows for punitive damages and (2) that Louisiana law on conflicts of laws permits a Louisiana court to apply Texas law in this case. Record Document 20-1, p. 1 & 3. The Court does not credit these conclusory statements as more convincing briefing. Plaintiffs do not apply Texas or Louisiana law regarding punitive damages to the facts of this case. Even if the Court did find these assertions to constitute a sufficient legal basis for awarding punitive damages, Plaintiffs have made no effort to demonstrate why they are entitled to punitive and noneconomic damages in the amounts that they request or to provide any legal basis for their requested amount of non-economic damages.

Record Document 17, p. 10. Therefore, the Court has nothing upon which to base a deviation from its previous holding that Plaintiffs have not shown any factual or legal basis for the award of non-economic and punitive damages.

### C. Attorney's Fees

Plaintiffs also pray for attorney fees. Record Document 1, ¶ 71. The Court finds that Plaintiffs are entitled to attorney's fees pursuant to Louisiana Civil Code article 1958, which states that "[t]he party against whom rescission is granted because of fraud is liable for damages and attorney fees." In order to calculate the proper amount of attorney's fees to be awarded, district courts use the lodestar method. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). Under the lodestar method, the court determines the reasonable hourly rates for the participating attorneys and the reasonable number of hours expended on the litigation. *See id.* These two figures are multiplied together to arrive at the lodestar. *See id.* Reasonable fees "are to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The Fifth Circuit has stressed that the lodestar is presumptively reasonable and should be adjusted upward or downward only in exceptional circumstances, and only if an analysis of the twelve factors set forth in *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717–19 (5th Cir. 1974), so warrants. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

### 1. Reasonable Hourly Rate

Plaintiffs seek $17,051.78 in costs and attorney's fees. Record Document 20-21, p. 1. This total includes fees for one attorney: David A. Szwak ("Szwak"). *Id.* Plaintiffs submit the affidavit of Szwak, as well as an itemized invoice, as evidence of the attorney's fees and costs that they incurred. These documents indicate that Szwak expended a total of 53.4 hours on this case, which,

multiplied by his hourly rate of $300 and added to $1,031.78 in costs,[7] equals a total amount of $17,051.78. *Id.* at 5 & 7.

Szwak's affidavit states that $300.00 an hour is on the lowest end of his rates for consumer cases and that he has previously been approved at rates of $225 and higher for years. *Id.* at 2. However, only one of the two citations provided by Szwak in support of these assertions shows the hourly rate he was awarded and in that case he was awarded $225 an hour. *Id*; *see Thompson v. Equifax Credit Info. Servs., Inc.*, No. Civ. A. 00-A-1468-5, 2003 WL 1579757 at * 6 (M.D. Ala. Mar. 3, 2003). Despite his claims, Szwak has not provided any evidence, such as rates awarded to other attorneys or prevailing rates in the area, to support a rate of $300 an hour. Therefore, the Court finds that a rate of $225 an hour should be applied to the number of hours Szwak spent on this case. *See Blum*, 465 U.S. at 895 n.11 ("[t]he burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.").

2. Reasonable Number of Hours

The party requesting an award of attorney's fees bears the burden of demonstrating the reasonableness of the hours billed and must prove that billing judgment was exercised. *See Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Id.* All "excessive, duplicative, or inadequately documented" time should be eliminated from an attorney's fee award. *Watkins*, 7 F.3d at 457. "The hours surviving this vetting process are those reasonably expended on the litigation." *Id.; see also Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir. 1990) ("Ideally, billing judgment is reflected in the fee application, showing

---

[7] The costs that Plaintiffs are entitled to recover are discussed in the next section.

not only hours claimed, but also hours written off."); *Leroy v. City of Houston*, 831 F.2d 576, 585–86 (5th Cir. 1987) (explaining that billing records that lack explanatory details are unacceptable). "The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment." *Walker v. U.S. Dep't of Housing and Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996).

Nowhere in Szwak's two-page affidavit does he address billing judgment. *See* Record Document 20-21, pp. 1–2. Nor do his invoices reflect any hours that were written off. *See id.* at 4–7. However, the Court has reviewed the invoices and found that the hours Szwak spent on this case were not redundant, unproductive, or excessive. Furthermore, Szwak did not charge Plaintiffs for whatever time he spent in preparing the instant motion after the Court denied Plaintiffs' first motion. Accordingly, the Court will not reduce the hours awarded to compensate for a lack of billing judgment.

### 3. Adjustment to Lodestar

Szwak's reported total of 53.4 hours of work performed multiplied by an hourly rate of $225 equals $12,015.00.

As stated above, an adjustment to the lodestar amount is only warranted in exceptional circumstances, and only in accordance with the factors set out in *Johnson*. *Watkins*, 7 F.3d at 457. After calculating the lodestar at $11,414.25, the Court is reminded of the strong presumption that the lodestar is reasonable. *Id.* After a review of the *Johnson* factors,[8] the Court does not find that either an upward or downward adjustment of the lodestar is warranted.

---

[8] The twelve Johnson factors are as follows: 1) the time and labor required for the litigation; 2) the novelty and complexity of the issues; 3) the skill required to properly litigate the issues; 4) whether the attorneys had to refuse other work to litigate the case; 5) the attorneys' customary fee; 6) whether the fee is fixed or contingent; 7) whether the client or case circumstances imposed any time constraints; 8) the amount involved and the results obtained; 9) the experience, reputation,

D.   Costs

Plaintiffs also pray for the recovery of costs [Record Document 1, ¶ 71], to which they are entitled. Federal Rule of Civil Procedure 54(d) states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). In Szwak's affidavit, he states that Plaintiffs incurred costs in the amount of $1,031.78. Record Document 20-21, pp. 5 & 7. However, not all of the items included in Szwak's total amount of costs are recoverable under Rule 54(d).

"A district court may award certain taxable costs to a prevailing party." *U.S. ex rel King v. Solvay Pharm., Inc.*, 871 F.3d 318, 334 (5th Cir. 2017). Taxable costs are limited to relatively minor expenses and amount to "a fraction of the nontaxable expenses borne by litigants . . . ." *Id.* (quoting *Taniguchi v. Kan. Pac. Saipan, Ltd.*, 556 U.S. 560, 573 (2012)). Title 28 U.S.C. § 1920 sets forth the categories of expenses that a judge may tax as costs. These categories are:

(1)  Fees of the clerk and marshal;
(2)  Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3)  Fees and disbursements for printing and witnesses;
(4)  Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5)  Docket fees under section 1923 of this title;
(6)  Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. Because Plaintiffs cannot recover for costs not included in § 1920, the Court will evaluate whether each of Szwak's claimed categories of costs fall into one of those six

---

and ability of the attorneys; 10) whether the case was "undesirable"; 11) the type of attorney-client relationship and whether that relationship was long-standing; and 12) awards made in similar cases. *Johnson*, 488 F.2d at 717–19.

categories. *See Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993) ("[A] district court may decline to award the costs listed in [§ 1920] but may not award costs omitted from the list.").

i. *Court Costs*

Szwak claims $400.00 in court costs. Record Document 20-21, p. 5. Based on the amount of the fee and the date it was paid, the Court assumes this $400.00 was for the initial filing fee. A filing fee is a fee of the clerk or marshal and therefore included in § 1920(1). Therefore, the Court will allow Plaintiffs to recover the $400.00 filing fee.

ii. *Process Servers*

Szwak claims $250.00 for process servers. Record Document 20-21, p. 5. Szwak paid $100.00 to "Professional Civil Process #2713" and $150.00 to "RBC Process Svcs." *Id.* The Fifth Circuit has held that, absent exceptional circumstances, fees for private process servers are not recoverable as costs under Rule 54(d). *Zastrow v. Houston Auto M. Imports Greenway, Ltd.*, 695 F. App'x 774, 780 (5th Cir. 2017) (per curiam) (citing *Cypress-Fairbank Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 257 (5th Cir. 1997)); *see also Marmillion v. Am. Intern Ins. Co.*, 381 F. App'x 421, 431 (5th Cir. 2010) (per curiam). Plaintiffs have not argued that exceptional circumstances exist; thus, their private process server costs are not recoverable under § 1920(1).

iii. *Travel*

Szwak claims a total of $35.50 for travel expenses. Record Document 20-21, pp. 5 & 7. Travel expenses are not included in § 1920 and are therefore not recoverable as costs. *Coats*, 5 F.3d at 891.

iv. *Copies*

Szwak claims a total of $131.00 for the cost of copies. Record Document 20-21, pp. 5 &

7. Pursuant to § 1920(4), copies are recoverable when they are necessarily obtained for use in the

case. Although Szwak's affidavit does not specify how the copies were necessary for the case, the

Court will allow Plaintiffs to recover the costs for copies because they are reasonably low. *See*

*Migis*, 135 F.3d at 1049 ("The district court has broad discretion in taxing costs . . . .).

v. *PACER*

Szwak claims a total of $14.20 for PACER fees. Record Document 20-21, p. 5 & 7. The

Fifth Circuit has not ruled on whether PACER fees are recoverable as costs and district courts are

split on this matter. *Zastrow*, 695 F. App'x at 780. Moreover, Szwak's affidavit does not state what

purpose was served by these fees. Therefore, Plaintiffs may not recover PACER fees as taxable

costs.

vi. *Postage*

Szwak claims a total of $33.52 for postage costs. Record Document 20-21, pp. 5 & 7. Postal

expenses are not included in § 1920 and are therefore not recoverable as costs. *Migis*, 135 F.3d at

1048 (holding that the district court did not abuse its authority in denying costs for, among other

things, postage and computerized legal research); *Embotelladora Agral Regiomontana, S.A. de*

*C.V. v. Sharp Capital, Inc.*, 952 F. Supp. 415, 418 (N.D. Tex. 1997). Accordingly, the Court will

not award Plaintiffs postage costs.

vii. *Westlaw*

Szwak claims a total of $161.25 in expenses for Westlaw/legal research. Record Document

20-21, pp. 5 & 7. Computer research expenses are not included in § 1920. In fact, "[c]ourts have

repeatedly clarified that computer research is not a separately taxable cost but 'a substitute for an

attorney's time that is compensable under an application for attorneys' fees.'" *Sorbo v. United Parcel Service*, 432 F.3d 1169, 1180 n.10 (10th Cir. 2005) (quoting *U.S. ex rel. Evergreen Pipeline Constr. Co., Inc. v. Merrit Meridian Constr. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996)); *see also Migis*, 135 F.3d at 1048. Accordingly, Plaintiffs cannot recover costs incurred for Westlaw/legal research under Rule 54(d) and § 1920.

viii.  *Long distance/fax/phone*

Szwak claims a total of $6.31 for long distance/fax/phone. Record Document 20-21, p. 5. Long distance phone and fax expenses are not included in § 1920 and therefore not recoverable as costs. *Embotelladora*, 952 F. Supp. at 418.

Based on the above, Plaintiffs' total recoverable costs are as follows:

| | |
|---|---|
| Court Costs | $ 400.00 |
| Copies | $ 131.00 |
| | |
| Total | $ 531.00 |

Accordingly, the Court awards Plaintiff a total of $531.00 in costs pursuant to Federal Rule of Civil Procedure 54(d).

E.  Pre- and Post-Judgment Interest

In their complaint, Plaintiffs pray for "legal interest thereon from date of judicial demand until paid." Record Document 1, ¶ 71. The Court construes this statement as a request for pre-and post-judgment interest. In a diversity case, pre-judgment interest is governed by applicable state law. *Hall v. White, Getgey, Meyer Co., LPA*, 465 F.3d 587, 595 (5th Cir. 2006). In this case, Plaintiffs asserted federal question jurisdiction under federal securities statutes. Record Document 1-1, p. 1.  However, the Court has found that only their allegation of fraud represented a viable claim to relief. *See supra, section I.* The fraud claim arises out of state law and is before this Court

based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367. This Court could not locate any Fifth Circuit jurisprudence directly addressing this situation, however, several other circuit courts have explicitly held that the calculation of pre-judgment interest on supplemental state law claims is also governed by state law. *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998); *Mills v. River Terminal Ry. Co.*, 276 F.3d 222, 228 (6th Cir. 2002); *Doty v. Sewall*, 908 F.2d 1053, 1063 (1st Cir. 1990); *Ambromovage v. United Mine Workers of Am.*, 726 F.2d 972, 981 n.25 (3d Cir. 1984); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). Accordingly, pre-judgment interest in this case is governed by Louisiana law.

Pursuant to Louisiana Revised Statute § 13:4203, "[l]egal interest shall attach from date of judicial demand, on all judgments, sounding in damages, "ex delicto", which may be rendered by any of the courts."[9] Under this statute, Plaintiffs are entitled to receive pre-judgment interest "from the date of judicial demand." *Ethyl Corp. v. Gulf States Utils., Inc.*, 2001-2230 (La. App. 1 Cir. 10/2/02); 836 So. 2d 172, 181.

While state law controls the award of pre-judgment interest, federal law controls the award of post-judgment interest, "including decisions about when it began to accrue." *Art Midwest, Inc. v. Clapper*, 805 F.3d 611, 615 (5th Cir. 2015) (citing *Nissho-Iwai Co. v. Occidental Crude Sales,*

---

[9] "Fraud is by its very nature ex delicto." *Camalo v. Courtois*, 2019-15 (La. App. 3 Cir. 10/2/19); 280 So. 3d 956, 960. In this case Defendants did not breach a specific provision of the contract; rather, the object of the contract never existed. Therefore, the Court finds that, by fraudulently inducing Plaintiffs to enter into a contract with them, Defendants breached a general duty to the public rather than a specific contractual obligation to Plaintiffs. *See Trinity Universal Ins. Co. v. Horton*, 33, 157, (La. App. 2 Cir. 4/5/00); 756 So. 2d 637, 638) (quoting *Harrison v. Gore*, 27,254 (La. App. 2 Cir. 8/23/95); 660 So. 2d 563, *writ denied*, 95-2347 (La. 12/8/95); 664 So. 2d 426) ("The classical distinction between 'damages ex contractu' and 'damages ex delicto' is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty to all persons.").

*Inc.*, 848 F.2d 613, 622–24 (5th Cir. 1988)). Title 28 U.S.C. § 1961(a) states that interest shall be allowed on any money judgment in a civil case recovered in a district court, calculated from the date of the entry of the judgment. Therefore, Plaintiffs are entitled to receive post-judgment interest from the date of entry of the judgment in this case at the rate governed by 28 U.S.C. § 1961(a).

## CONCLUSION

For the reasons stated above, Plaintiffs' Renewed Motion for Default Judgment [Record Document 20] is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** as to Plaintiffs' fraud claims but **DENIED** as to all other claims.

Plaintiffs are awarded general damages in the amount of $25,750.00, attorney's fees in the amount of $12,015.00, and costs in the amount of $531.00, along with pre-judgment interest from the date of judicial demand as set forth in Louisiana Revised Statutes §§ 13:4202 and 4203 and post-judgment interest from the date of entry of this Judgment at the federal rate specified in 28 U.S.C. § 1961(a).

A judgment closing this case and awarding damages and costs will be issued separately.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 11th day of December, 2019.

 

 

 

 

 

_____
ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE